**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 22-2896

MICHAEL GRASSO,
Individually and trading as General Partner of GF 2014, L.P.,
Appellant

v.

TOBY KATZ

On Appeal from the United States
District Court for the Eastern District of Pennsylvania
(D.C. No. 2-21-cv-05472)
District Judge: Honorable Cynthia M. Rufe

Submitted Under Third Circuit L.A.R. 34.1(a)
June 23, 2023

Before: CHAGARES, *Chief Judge*, BIBAS, and MATEY, *Circuit Judges*.

(Opinion filed: July 19, 2023)

OPINION*

---

* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

**MATEY**, *Circuit Judge*.

Marshall Katz obtained a $23 million default judgment against Joseph Grasso. Joseph has not paid, Marshall has passed away, Toby Katz (Marshall's widow) wants to execute on the judgment, and Michael Grasso (Joseph's father) opposes Toby's efforts.[1] But Michael cannot resort to the federal courts' help as his tort claims do not plausibly entitle him to relief, and his request for a declaratory judgment is unripe. So we will affirm the District Court's judgment.

## I.

Twists and turns abound in this action, so we include only a summary. First, there is the real estate. Before litigation on the default judgment began, Michael gifted Joseph and his wife a 99% limited partnership interest in "a real estate holding company" named "GF 2014." App. 96 ¶ 53. Joseph and his wife took possession of the interest as tenants by the entireties. Michael remains General Partner of GF 2014.

At the time of the transfer, GF 2014 owned several assets including a property located at 649 Dodds Lane, Gladwyne, Pennsylvania ("Dodds Lane Property"). After a gas leak destroyed a mansion on the Dodds Lane Property, GF 2014 filed an insurance claim that Clarke & Cohen adjusted. The insurance company paid $3 million for the loss and specified $120,375.92 as the "[u]ndisputed amount of second partial payment," although the record does not disclose whether Michael or GF 2014 ever received this second payment. App. 117.

---

[1] Given the shared last names among the family members relevant to this dispute, this opinion follows the parties' convention of using first names as descriptors.

Second, there are the subpoenas Toby issued to Michael's adult family members and entities connected to Joseph's assets. One demand went to Clarke & Cohen, and another to Fox & Roach, a real estate company hired by GF 2014 to sell the Dodds Lane Property after the explosion.[2]

Michael, in his individual capacity and as General Partner of GF 2014, sued Toby. After Toby removed to federal court, Michael filed an Amended Complaint bearing three claims: abuse of process, tortious interference with existing and prospective business relationships, and declaratory judgment. The District Court dismissed the abuse of process and declaratory judgment claims for lack of subject matter jurisdiction under Article III. It dismissed the tortious interference claim for failure to state a claim. And the District Court dismissed all the claims with prejudice, concluding further amendments would be futile.[3]

---

[2] The sale was pending when Michael filed his Amended Complaint. The sale closed for $2 million in February 2022 after briefing on the motion to dismiss had concluded. Toby provided a certified public record confirming the sale and amount, facts we may consider as a matter of judicial notice. *See* Fed. R. App. P. 10(a); *Landy v. Fed. Deposit Ins. Corp.*, 486 F.2d 139, 151 (3d Cir. 1973).

[3] We have jurisdiction to review the District Court's final judgment under 28 U.S.C. § 1291, although we cannot reach the merits if we determine the District Court lacked subject matter jurisdiction under Article III. *See Finkelman v. Nat'l Football League*, 810 F.3d 187, 192 n.31 (3d Cir. 2016). We exercise plenary review over the District Court's decision to dismiss Michael's claims under Rules 12(b)(1) and 12(b)(6). *See id.* at 192. And we review its decision to dismiss with prejudice for abuse of discretion. *See Ramsgate Ct. Townhome Ass'n v. West Chester Borough*, 313 F.3d 157, 161 (3d Cir. 2002). We may affirm on any ground supported by the record, even if the District Court's judgment did not rest on this same ground. *See Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 282 & n.14 (3d Cir. 2012).

**A.     Tort Claims**

Toby argues Michael lacks standing to bring claims for abuse of process and tortious interference. To establish standing and show that he has some "personal stake in the case," Michael must allege "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (cleaned up); *see also Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 152 & n.3 (3d Cir. 2022). Because this case is still at the pleading stage, Michael must allege facts, taken as true, that "plausibly," *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1621 (2020), demonstrate the elements of "standing for each claim," *TransUnion*, 141 S. Ct. at 2208.

1.     Abuse of Process

Toby argues Michael failed to plead a legally protected interest because the Amended Complaint omits allegations for one of the abuse-of-process elements: use of "legal process *against the plaintiff*." *Rosen v. Am. Bank of Rolla*, 627 A.2d 190, 192 (Pa. Super. Ct. 1993) (emphasis added). But leaning this heavily on the "legally protected interest" language "blend[s] standing and merits together in a manner that the Supreme Court has exhaustively cautioned courts against." *Cottrell v. Alcon Lab'ys*, 874 F.3d 154, 165 (3d Cir. 2017). "[A] valid claim for relief is *not* a prerequisite for standing," *id.* at 166, otherwise every challenge under Federal Rule of Civil Procedure 12(b)(6) would spiral "into an Article III standing evaluation," *id.* at 164. So courts must "maintain [a]

fundamental separation between standing and merits at the dismissal stage" by "assum[ing] for the purposes of [a] standing inquiry that a plaintiff has stated valid legal claims." *Id.* at 162.

Assuming the validity of Michael's claim leaves no doubt that he has asserted a legally protected interest. The abuse of process tort traces to English common law and guards against "the use of legal process, whether criminal or civil, against another to accomplish a purpose for which it is not designed." 1 William L. Prosser, Handbook of the Law of Torts 892 (1941). Meaning the interest against abusive legal process has long been considered judicially cognizable. *See Cottrell*, 874 F.3d at 164 (stating the "common law" may itself create "legally protected interests").

Michael's allegations also establish an injury in fact that was "likely caused" by Toby's conduct and "would likely be redressed by judicial relief." *TransUnion*, 141 S. Ct. at 2203. The injury in fact is plain enough. Michael alleges he and GF 2014 incurred "inordinate expenses associated with responding to [Toby's] abusive process," App. 98 ¶ 72, and we have held that allegations of "tangible, economic harm . . . satisf[y] the concreteness requirement." *Cottrell*, 874 F.3d at 167. Michael has also alleged that he and GF 2014 have already incurred these expenses, making the injury more than "merely 'conjectural or hypothetical.'" *Id.* at 168 (quoting *Spokeo, Inc. v. Robbins*, 136 S. Ct. 1540, 1548 (2016)). Moreover, the expenses are fairly traceable to Toby's subpoenas and could be redressed by a favorable monetary award. *See Clemens*, 48 F.4th at 158. All meaning that Michael has standing to pursue his abuse of process claim, and that it was error for the District Court to conclude otherwise.

5

## 2. Tortious Interference

Like abuse of process, tortious interference enjoys a rich common law pedigree, *see* 1 Prosser, *supra*, at 972, and Michael has satisfied the three "irreducible" elements of standing for this claim, *Spokeo*, 136 S. Ct. at 1547. He has alleged a concrete injury in fact by claiming that Toby's subpoenas interfered with his and GF 2014's relations with Fox & Roach to the point that the firm "now refuses to engage in basic communication." App. 95 ¶ 50; *see TransUnion*, 141 S. Ct. at 2208 (stating that "reputational harm" can qualify as a concrete injury in fact). And these reputational harms are fairly traceable to Toby's alleged interference, which could be redressed by a favorable decision awarding monetary damages and injunctive relief. Accordingly, Michael has standing to bring his tortious interference claim.

## B. Declaratory Judgment Claim

Like any other type of claim, a "declaratory-judgment action[] must satisfy Article III's case-or-controversy requirement." *California v. Texas*, 141 S. Ct. 2104, 2115 (2021). At a minimum, this means the dispute must be "'definite and concrete, touching the legal relations of parties having adverse legal interests'; and that it be 'real and substantial' and 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (alteration in original) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41 (1937)). We have cast these requirements in terms of ripeness, which "prevents courts from

'entangling themselves in abstract agreements.'" *Surrick v. Killion*, 449 F.3d 520, 527 (3d Cir. 2006) (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148 (1967)).

As General Partner of GF 2014, Michael seeks a judgment "declaring that the Entireties Interest [is] not subject to execution with respect to [Toby's] judgment against only Joseph." App. 100 ¶ 83. This claim is unripe. "Adversity requires opposing legal interests." *Lewis v. Alexander*, 685 F.3d 325, 341 (3d Cir. 2012). And it is "a 'fundamental restriction on our authority' that '[i]n the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties.'" *Hollingsworth v. Perry*, 570 U.S. 693, 708 (2013) (alteration in original) (quoting *Powers v. Ohio*, 499 U.S. 400, 410 (1991)). But Joseph and his wife own the Entireties Interest—it does not belong to Michael, even as General Partner of GF 2014. App. 92 ¶ 26. Deeming *their* interest nonexecutable would amount to an advisory opinion on the "legal rights or interests" of third parties. *Hollingsworth*, 570 U.S. at 708. Something we cannot do.

Additionally, "[a] dispute is not ripe for judicial determination 'if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Wyatt, Virgin Islands, Inc. v. Gov't of Virgin Islands*, 385 F.3d 801, 806 (3d Cir. 2004) (citation omitted). "Claims based merely upon assumed potential invasions of rights are not enough to warrant judicial intervention." *Id.* (quoting *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 325 (1936)) (quotation marks omitted). Michael has not alleged that Toby has attempted to execute on the Entireties Interest—much less that a

7

threat of execution is "imminent." *MedImmune*, 549 U.S. at 128. For these reasons, the District Court properly concluded that Michael's declaratory judgment claim was unripe.

## III.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Though "we are required to accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom," we "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citation omitted). Neither of Michael's remaining claims survive this standard. So we will remand for the District Court to dismiss the abuse of process claim for failure to state a claim, and affirm its dismissal of the tortious interference claim.

### A. Abuse of Process

To state a claim for abuse of process under Pennsylvania law, the plaintiff must allege that "the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed[,] and (3) harm has been caused to the plaintiff." *Rosen*, 627 A.2d at 192. The first element is key to this appeal. Michael does not challenge the subpoena Toby served on him; instead, he claims Toby unlawfully subpoenaed *other* entities and individuals, such as Fox & Roach, Clarke & Cohen, and family members. By challenging subpoenas issued to third parties instead of

8

himself, Toby claims Michael failed to allege the use of "legal process against the plaintiff." Response Br. 40.

Michael admits his claim does not stem from subpoenas that were "directed to or served upon the plaintiff," Reply Br. 2, but argues he may proceed anyway because he was the "legal object" of the subpoenas sent to Fox & Roach and Clarke & Cohen, Opening Br. 17–21. In making this argument, Michael primarily relies on two cases: *Cruz v. Princeton Insurance Co.*, 925 A.2d 853 (Pa. Super. Ct. 2007), *rev'd on other grounds*, 950 A.2d 269 (Pa. 2008) (per curiam); and *Allied Medical Associates v. State Farm Mutual Automobile Insurance Co.*, No. 08-cv-02434, 2008 WL 4771850 (E.D. Pa. Oct. 30, 2008). But we agree with the District Court: neither offer Michael a path forward.

*Cruz* allowed parents to bring an abuse of process claim against an attorney who filed a petition to appoint a guardian ad litem for their minor son. 925 A.2d at 857. But the petition in *Cruz* was "captioned against" the parents "in their own right" and "was directed at [them] individually." *Id.* And the Superior Court found "that the petition's undeniable aim was the removal of [the parents] as [the child's] guardians." *Id.* The same cannot be said for Toby's subpoenas to Clarke & Cohen and Fox & Roach. Those subpoenas were directed solely to those entities and did not have the "undeniable aim" of impacting Michael or GF 2014's interests. *Id*. Michael also overreads *Allied*. That case involved a defendant that served legal process on third parties to "obtain information" *from the plaintiff* to "drive it out of business" by uncovering "reason[s] to avoid remitting reimbursement payments." 2008 WL 4771850, at *7–8. The Amended Complaint, by

9

contrast, does not allege Toby's subpoenas to Fox & Roach and Clarke & Cohen sought information from Michael or GF 2014.

Because Michael's Amended Complaint fails to establish one of the elements for abuse of process—the use of process against the plaintiff—we will remand for the District Court to dismiss this claim under Rule 12(b)(6).

## B. Tortious Interference

The District Court correctly dismissed Michael's tortious interference claim under Rule 12(b)(6). The Amended Complaint alleges two types of tortious interference: interference with an existing contract and interference with prospective business. To prevail on either type of claim under Pennsylvania law, the plaintiff must allege:

> (1) the existence of a contractual or prospective contractual or economic relationship between the plaintiff and a third party; (2) purposeful action by the defendant, specifically intended to harm an existing relationship or intended to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; (4) legal damage to the plaintiff as a result of the defendant's conduct; and (5) for prospective contracts, a reasonable likelihood that the relationship would have occurred but for the defendant's interference.

*Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 212 (3d Cir. 2009). The Amended Complaint falls short of plausibly alleging all of these elements.

### 1. Existing Contract

Michael identifies only one contract with which Toby allegedly interfered: GF 2014's agreement with Fox & Roach to sell the Dodds Lane Property. Under Pennsylvania law, "the plaintiff, as part of his prima facie case, [must] show that the defendant's conduct was not justified." *Id.* at 214. But Toby issued the Fox & Roach

10

subpoena under Pennsylvania Rule of Civil Procedure 3117, which permits a plaintiff to "take the testimony of any person" "for the purpose of discovery of assets of the defendant." Pennsylvania courts have held that Rule 3117 allows broad "discovery even of persons known *not* to possess assets of the defendant where such discovery could provide information which would be relevant to the plaintiff's efforts to locate assets." *PaineWebber, Inc. v. Devin*, 658 A.2d 409, 415 (Pa. Super. Ct. 1995).

The Fox & Roach subpoena sought relevant information about Joseph's assets. Michael generally alleges that "[t]here is no information that can be obtained from Fox & Roach that could in any way impact execution on the [Joseph] Grasso Judgment." App. 96 ¶ 54. But this is a bare bones allegation premised on a legal conclusion—that the Entireties Interest associated with the Dodds Lane Property is categorically exempt from execution. Even assuming the legal conclusion is correct (an issue we do not address), the Fox & Roach subpoena sought information about other assets possibly connected to Joseph beyond the Dodds Lane Property.

2.      Prospective Contracts

Michael finally alleges that Toby tortiously interfered with his and GF 2014's "prospective business relationships." App. 98. Specifically, he claims he and GF 2014 "reasonably expected to continue to do business" with Fox & Roach and Clarke & Cohen. App. 99 ¶ 76. Those relationships do not count. In Pennsylvania, a plaintiff alleging tortious interference must "base [his] claim that there was a prospective contractual relationship on something other than an existing or current relationship." *Acumed*, 561 F.3d at 213 (citing *Phillips v. Selig*, 959 A.2d 420, 429 (Pa. Super. Ct.

11

2008)). Because Michael roots his prospective contract expectations in the "mere hope that there will be a future contract," he cannot state a claim for tortious interference with prospective business. *Id.*

\*       \*       \*

To sum up, Michael has standing to bring his tort claims but they fail on the merits. So the District Court should have dismissed both for failure to state a claim under Rule 12(b)(6). The District Court properly dismissed Michael's declaratory judgment claim on ripeness grounds.[4] So we will affirm the District Court's judgment, but remand for the District Court to dismiss Michael's abuse of process claim for failure to state a claim under Rule 12(b)(6).

---

[4] Seeing no abuse of discretion, we will affirm the District Court's dismissal with prejudice.

12